Case 1:24-mj-00113-MAU Docum

Case: 1:24-mj-00113
Assigned To : Judge Moxila A. Upadhyaya
Assign. Date : 3/26/2024
Description: COMPLAINT W/ARREST WARRANT

**STATEMENT OF FACTS**

Your affiliate, ███████ is a Special Agent assigned to the FBI Salt Lake City Field Office. In my duties as a special agent, I investigate, among other things, criminal cases relating to domestic terrorism. Currently, I am tasked with investigating criminal activity in and around the Capitol grounds on January 6, 2021. As a Special Agent, I am authorized by law or by a Government agency to engage in or supervise the prevention, detection, investigation, or prosecution of a violation of Federal criminal laws.

The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification were allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of

violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

In the days preceding January 6, 2021, Zach Rash travelled to Washington D.C. from Utah. On January 6, 2021, Rash attended the former president's rally.

During the rally, Rash travelled with a crowd to the U.S. Capitol, eventually finding his way to the West Plaza. The image below showed Rash on the West Plaza near a police line established by officers to prevent the developing mob from advancing further on the U.S. Capitol.



At approximately 2:28 p.m., the police line on the West Plaza collapsed after rioters successfully overcame officers, forcing officers to retreat toward the U.S. Capitol building. In response, rioters climbed stairs and scaffolding to the Lower and Upper West Terrace. Open-source footage captured Rash among the initial wave of rioters to overtake the Lower West Terrace. The image below showed Rash on the Lower West Terrace at this time carrying a fire extinguisher (depicted in the red square).



From here, Rash moved toward the Inauguration Tunnel Entrance ("Tunnel") on the Lower West Terrace. Rash appeared in numerous open-source videos standing with rioters outside the Tunnel during this time. At approximately 2:50 p.m., Capitol CCTV footage captured Rash enter the Tunnel as depicted below.



Rash immediately made his way deeper into the Tunnel where rioters were assaulting law enforcement. For the next few minutes, Rash moved to different locations inside the Tunnel and, at one point, waived to other rioters on the lower West Terrace to join the chaotic scene unfolding around him. The image below from CCTV footage captured Rash encouraging other rioters to join him in the Tunnel.



At approximately 2:53 p.m., CCTV footage captured another rioter identified as Bryan Smith[1] removing a stun gun from his pocket and sparking the stun gun to ensure it was operational. The below image depicted Smith in green at this time holding and sparking the stun gun in front of him, while Rash, depicted in yellow, is several feet to Smith's right.



After Smith ensured the stun gun worked properly, Smith waived the stun gun and offered it to other rioters in front of him. As the image below captured, Rash, in the yellow circle, reached for the stun gun and took it from Smith. Rash's hands first appeared on the stun gun in the red circle in the image below.



---

[1] Bryan Smith is charged with crimes arising out of his conduct at the U.S. Capitol on January 6, 2021, in *United States v. Bryan Smith,* case number 23-cr-71.

Seconds later, Rash, with the stun gun in his right hand, lunged toward officers in the Tunnel. Approximately 20 seconds later, Rash lunged at officers in the Tunnel a second time with the stun gun. The two images below captured these efforts, respectively.





Open-source footage from Rash's rear also captured these actions. The below image from an open-source video showed Rash with the stun gun in his right hand immediately before he lunged toward officers. Notably, the same open-source footage, and other Body Worn Camera footage of officers in the Tunnel, captured a distinct electrical sound akin to firing a stun gun and/or taser. Reviewing Rash's movement in this footage and matching the audio of this footage to the CCTV footage referenced above, indicated Rash triggered the stun gun numerous times in the Tunnel, including the moment he lunged toward officers.



After Rash's actions at approximately 2:54 p.m. Rash turned around to exit the Tunnel and passed the stun gun to an unidentified rioter. This rioter immediately handed the stun gun to another rioter identified as Vitali Gossjankowski[2], who retained the stun gun and subsequently used it against other officers. The image below showed Gossjankowski brandishing the stun gun inside the tunnel several seconds after Rash handed it to the unidentified rioter. The green circle showed Gossjankowski brandishing the stun gun toward the officers who are located just offscreen and the red circle showed the stun gun. Rash is barely visible in this image, hidden behind another rioter at the mouth of tunnel (circled in yellow).



After Rash left the tunnel, CCTV footage again captured Rash encouraging rioters to enter the tunnel and join the ongoing melee. He remained near the Tunnel entrance for several minutes chanting and engaging with rioters.

---

[2] Vitali Gossjankowski was convicted of offenses arising out of his conduct at the U.S. Capitol on January 6, 2021, in *United States v. Vitali Gossjankowski,* case number 21-cr-123.

Rash re-entered the tunnel at approximately 2:57 p.m., making his way to the front of the mob and joining a coordinated "Heve-Ho" push by rioters against officers. At certain points in this push, CCTV footage captured Rash yelling at other rioters, apparently encouraging and/or directing their actions. Several minutes later at approximately 3:00 p.m., the below CCTV and open-source images captured Rash climb above other rioters to secure a better view of the ongoing action against officers at the front of the mob.





At one point, standing above other rioters, Rash helped pass a police shield, depicted in the image below.



From here, Rash jumped forward to a position at the front of the mob. In this position, Rash was at the forefront of the mob's actions against officers, including another coordinated push by rioters at 3:03 p.m. In this position, open-source footage captured Rash obstruct officers' efforts to close a door, circled in green in the image below. In this image, derived from open-source footage, Rash, along with other rioters, struggled with officers to keep the door open, facilitating ongoing attempts by rioters to assault, and push through, officers in the Tunnel.



Rash remained in this position for nearly 10 minutes until approximately 3:13 p.m. At this time, Rash moved toward the Tunnel entrance, eventually departing the Tunnel at 3:15 p.m. where he remained on the Lower West Terrace among the mob for an undetermined amount of time before departing the U.S. Capitol.

On October 5, 2022, Rash submitted to an interview with the FBI. In this interview, Rash acknowledged travelling to Washington D.C. prior to January 6, 2021. Rash stated that after listening to the former president's speech, he eventually travelled to the U.S. Capitol. The interviewing agent presented Rash with numerous photos of Rash at the U.S. Capitol, including in

the Tunnel. Rash positively identified himself to the interviewing agent in these photos. Rash stated that he did not bring a stun gun to the U.S. Capitol but, after seeing images of himself in the Tunnel possessing a stun gun, told the agent that he received a stun gun at some point in the Tunnel. In response, Rash acknowledged holding onto the stun gun for several minutes but advised he "dropped it and didn't want anything to do with it." In response to further questions about the stun gun, Rash equivocated on whether he assaulted officers with the stun gun in the Tunnel. He stated, "I don't think I used it that day" but "it could have happened." Rash acknowledged that he activated the stun gun, and when pressed by the interviewing agent on his vague and noncommittal representations, Rash could not explicitly say he did not use the stun gun on officers in the Tunnel.

Based on the foregoing, your affiant submits there is probable cause to believe that Zach Rash violated 18 U.S.C. 231(a)(3), which makes it unlawful to commit or attempt to commit any act to obstruct, impede, or interfere with any fireman or law enforcement officer lawfully engaged in the lawful performance of his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects commerce or the movement of any article or commodity in commerce or the conduct or performance of any federally protected function. For purposes of Section 231 of Title 18, a federally protected function means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof. This includes the Secret Service's protection of the Vice President and his family and the Capitol Police's protection of the U.S. Capitol.

I submit there is also probable cause to believe that Rash violated 18 U.S.C. § 111(a)(1) and 2, which makes it a crime to forcibly assault, resist, oppose, impede, intimidate, or interfere with any person designated in section 1114 of Title 18 while engaged in or on account of the performance of official duties, where such acts involve physical contact with the victim or the intent to commit another felony. Persons designated within section 1114 of Title 18 include federal officers such as USCP officers and include any person assisting an officer or employee of the United States in the performance of their official duties.

I further submit there is probable cause to believe that Zach Rash violated 18 U.S.C. § 1752(a)(1), (2), and (4) which makes it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do so; and (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; (4) knowingly engages in any act of physical violence against any person or property in any restricted building or grounds; or attempts or conspires to do so.  For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

Lastly, your affiant submits there is also probable cause to believe that Rash violated 40 U.S.C. § 5104(e)(2) (D) utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent

to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress; (F) engage in an act of physical violence in the Grounds or any of the Capitol Buildings.



Federal Bureau of Investigation

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this  26th   day of March 2024.

_____
HONORABLE MOXILA A. UPADHYAYA
UNITED STATES MAGISTRATE JUDGE